JAMES MAHONEY *versus* INHABITANTS OF LINCOLNVILLE.

At a legal meeting held January 21, 1865, the defendant town voted, under a
proper article in the warrant, " to raise $400 to every drafted man entering
the service," and that the "selectmen give orders therefor." April 6, 1865,
one Churchill, an inhabitant of the defendant town, was drafted, and, on
April 10, he reported; and, being thereupon duly examined and accepted,
and allowed on defendants' quota, he was permitted to go home on condi-
tion that he would return at a specified time. April 11, he received from
the selectmen a negotiable town order for $125, which he negotiated to the
plaintiff. At the time specified, Churchill reported for duty, when he was
informed by the provost marshal that Lee's army had surrendered, that
his services would not be needed, and that he might return home and re-
main there till further notice. He returned home and was finally discharg-
ed in December following. In an action on the order, in the name of the
indorsee ; — *Held,* that Churchill " entered the service" within the meaning
of the vote of the town, and that the vote was within the statute of this
State.

ON REPORT.

APPLETON, C. J. — This is an action upon a town order,
given for a bounty.

At a town meeting duly called, to take measures to fill the
town's quota, on Jan. 7, 1865, the defendants voted to raise
a certain sum " to each man that is drafted, or procures a
substitute or volunteers." This was amended thus, " in-
tended to mean drafted men entering the service."

Elbridge F. Churchill, to whom, or bearer, the town order
in suit was payable, being drafted, at once reported himself

to the provost marshal of the fifth district, who certifies as follows : —

"Provost Marshal's Office, — Fifth District, State of Maine, — Belfast, April 10, 1865.

"I certify that the following persons have been drafted into the service of the United States, on the quota of Lincolnville, (sub-district,) in this district, entry of which muster and quota has been upon my records for return to the Adjutant General of Maine.

| Names. | Recruit for which Reg. | Date of Muster. | Remarks. |
|---|---|---|---|
| Elbridge F. Churchill, | Drafted. | April 10, 1865. | One year. |

"A. D. Bean, Capt. and Prov. Marshal Fifth District, Mustering officer."

The case shows that Churchill, at this time, was examined, passed as an able-bodied man, was accepted, and was then informed that he might go home and report at a certain day for duty; that, at the appointed time, he returned and reported for duty, but was informed that Lee's army had surrendered, and that his services as a soldier would not probably be required further, that he might return home and remain till further notified; that he never received further notice, and that, on Dec. 20, 1866, he received a discharge in the ordinary form from "the service of the United States," upon which was minuted the payment of $10,47.

By the Act approved Feb. 17, 1865, c. 298, the past acts and doings of cities, towns and plantations, in offering, paying, or agreeing to pay, and in raising the means to pay bounties to, and all notes and town orders given by the municipal officers of any city, town or plantation in pursuance of a previous vote, for the benefit of volunteers, drafted men, or substitutes of drafted or enrolled men, who have been or shall hereafter be *actually mustered* into the military or naval service of the United States, are hereby made valid.

The only questions raised and discussed are, whether the evidence shows that Churchill was "*actually mustered*" into

the military service of the United States, within the meaning of c. 298, § 1, and that he entered the service within the terms of the vote of the town.

The object of the town, by their vote, was to fill their quota. The drafted men answered that purpose, and were allowed on the quota. The certificate of the provost marshal shows that Churchill was drafted into the service of the United States, and the date when he was mustered in. From that date he was liable to the penalties of the law for desertion. He was subject to the orders of the government. His discharge shows that he had been in the service and had been discharged therefrom. He could not be discharged from a service into which he had never entered. He received the wages of a. soldier. To those he would not have been entitled had he never been in the service.

No objections are made to the evidence offered. From that evidence we think it satisfactorily established that Churchill entered the service of the United States, and was actually enrolled, and that his case is within the vote of the town and the statute of the State. That his services were not further required is his good fortune, but his claim is none the less within the vote of the town, — or the purview of the statute.                    *Defendants defaulted.*

KENT, WALTON, BARROWS and DANFORTH, JJ., concurred.

*N. Abbott*, for the plaintiff.

*W. G. Crosby*, for the defendants.